IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**JAMES MONTGOMERY** **PLAINTIFF**

**v.** **No. 3:15-cv-157-DPM**

**TRUMANN SCHOOL DISTRICT and MYRA GRAHAM, Individually and in her official capacity** **DEFENDANTS**

# ORDER

**1.** James Montgomery was the athletic director for the Trumann School District. The superintendent, Myra Graham, recommended to the school board that the district not renew his contract. The main reason given was that Montgomery had supposedly learned, but not reported, that a teacher and a high school student had a sexual relationship. Graham and a police officer confronted Montgomery, who agreed to the officer questioning him. He denied any wrongdoing. Montgomery was later charged with a misdemeanor. Graham sent Montgomery home with pay, recommended non-renewal to the board, and sent him the letter required by Arkansas law—explaining her reasons for recommending non-renewal and outlining his rights under the Teacher Fair Dismissal Act, ARK. CODE ANN. § 6-17-1501

*et seq*. Montgomery hired a lawyer and requested a hearing before the board.

There was, it's clear, no love lost between Graham and Montgomery. A former Trumann High School principal, Wanda Van Dyke, has testified in a late-breaking affidavit that Graham told one board member "this could be a reason to get rid of Jimmy Montgomery," and that Graham met with each board member before the hearing, "frontloading" the process against him. *№ 20-1 at ¶¶ 5, 7 & 10.*

The hearing was held on a date agreed by counsel. Montgomery appeared with his lawyer. He spoke. He knew he could present evidence and cross examine witnesses. He did both. The board voted five-zero that eleven of twelve reasons offered by superintendent Graham were true and one was false. By the same margin, the board also accepted Graham's overall recommendation and decided not to renew Montgomery's contract as athletic director. Montgomery did not appeal his contract's non-renewal to circuit court, or file this case, within the seventy-five days Arkansas law specifies for Fair Dismissal Act claims. ARK. CODE ANN. § 6-17-1510(d)(1). The circuit court eventually dismissed the misdemeanor non-report charge, holding that the state's proof didn't add up.

**2.** Montgomery's due process claims fail as a matter of law on this record. Precedent is clear. Under Arkansas law, renewal of a non-probationary teacher's contract is contingent, not certain. There's just not enough property in Montgomery's potential future contract for the Due Process Clause to protect. *Cato v. Collins*, 539 F.2d 656, 660–61 (8th Cir. 1976); *Hilton v. Pine Bluff Public Schools*, 796 F.2d 230, 232–34 (8th Cir. 1986). And two facts undermine Montgomery's liberty claim about resulting damage to his reputation. Montgomery's hearing before the board wasn't public. *Cato*, 539 F.2d at 660; *Hogue v. Clinton*, 791 F.2d 1318, 1321–23 (8th Cir. 1986). Montgomery also hasn't pointed to any evidence that his future employment prospects were damaged by the board's decision.

Montgomery works hard to avoid the reach of *Cato*, *Hilton*, and like cases. He argues that the board and superintendent Graham violated the Arkansas Freedom of Information Act in the pre-hearing meetings. He says the board members had their minds made up before the hearing. The group was thus not an unbiased decision-maker. And Montgomery says the potential criminal charges put him—without warning—in a Fifth Amendment bind: he could tell the board his side, or he could preserve his constitutional

right of silence, but he couldn't do both given the schedule for these proceedings.

None of these points, however, gets Montgomery's constitutional claims to a jury. Three of the five board members deposed said that nothing untoward occurred in any discussion with superintendent Graham before the board hearing. The other two weren't questioned on this point. But the Court must, and does, put all that evidence aside because former principal Van Dyke's affidavit could reasonably support the conclusion that the FOIA was not followed scrupulously. A violation of state law, though, doesn't equal a violation of the federal Constitution. *Bagley v. Rogerson*, 5 F.3d 325, 329-30 (8th Cir. 1993) (Richard S. Arnold, J.). While part of the constitutional minimum of due process is an unbiased decider, *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883-84 (2009), again, Montgomery's expectation of another year as athletic director wasn't legally definite enough to require due process before that expectation was eliminated. Montgomery's argument is therefore missing a legal premise. The Act provides teachers much more protection in keeping their jobs than Arkansas law provides to employees in general. And this protection helps prevent school board shenanigans. *E.g., Manila School*

*District Number Fifteen v. White*, 338 Ark. 195, 200–01, 992 S.W.2d 125, 128–29 (1999). But Montgomery didn't pursue his available remedies under the Act, and that road is no longer open. Last, Montgomery candidly acknowledges that *Hill v. Johnson*, 160 F.3d 469, 471 (8th Cir. 1998) forecloses his Fifth Amendment point about warnings and potentially incriminating statements. Plus, he was acquitted.

**3.** Taking the factual record in the light most favorable to Montgomery where genuinely disputed, the motion for summary judgment, *№ 11*, is granted with caveats. The Court declines to exercise supplemental jurisdiction over Montgomery's claims that the Arkansas Freedom of Information Act and the Arkansas Age Discrimination Act were violated. Those claims will be dismissed without prejudice. 28 U.S.C. § 1367(c). The Court's analysis has assumed, without deciding, that Montgomery is right about FOIA defects in the District's actions; and his age claim is undeveloped and somewhat novel. All his other claims will be dismissed with prejudice.

So Ordered.

DPMarshall Jr.
D.P. Marshall Jr.
United States District Judge

6 December 2016